**Elton NDREKO, Petitioner,**

v.

**Tom RIDGE, Secretary for the Department of Homeland Security; Scott Baniecke, Supervisor of Detention and Removal, Bureau of Immigration and Customs Enforcement; Jean Crewson, Interim District Director, Citizenship and Immigration Services, Department of Homeland Security; and Mark Cangemi, Interim Director, Bureau of Immigration and Customs Enforcement; Respondents.**

No. CIV.04–4969(MJD/RLE).

United States District Court, D. Minnesota.

Dec. 29, 2004.

Patricia G. Mattos, Mattos Law Office, St. Paul, MN, for Petitioner.

Mary Trippler, Assistant United States Attorney, Minneapolis, MN, for Respondents.

## MEMORANDUM OF LAW & ORDER

DAVIS, District Judge.

## I. INTRODUCTION

This matter was before the Court on the Government's Motion to Dismiss. [Docket No. 9] The Court heard oral argument on December 17, 2004. On that date, the Court issued an Order granting the Government's Motion to Dismiss and dissolving the Temporary Restraining Order. [Docket No. 16]. The Order stated that a memorandum of law would follow. Accordingly the Court issues the following memorandum. Additionally, the Court addresses the appropriate sanctions for the ethical violations committed by Ndreko's counsel, Patricia Mattos, in connection with this matter.

## II. FACTUAL BACKGROUND

Petitioner Elton Ndreko is a native of Albania. He left Albania is 1992 and entered the United States on approximately April 13, 1998, as a non-immigrant crewman. He was authorized to remain in the United States until May 11, 1998. He remained in the United States past May 11, and was provided with a Notice to Appear, charging him as removable for remaining in the United States without authorization after the expiration of the non-immigrant crewman authorization. Ndreko admitted that he was deportable, but filed an application for asylum and withholding of removal and for relief under the Convention against Torture.

After a hearing, at which Ndreko was represented by attorney Michael York, the Immigration Law Judge denied Ndreko's application. The Immigration Law Judge found that Ndreko was not credible, based, in part, on the conclusion that he had submitted fraudulent medical documents in support of his claim for asylum. At the INS's request, the State Department had conducted an investigation into the authenticity of those documents. The investigator interviewed employees of the Albanian hospital from which the documents purportedly came. The resulting report, stating that the medical documents were invalid, was entered into evidence by the Government at Ndreko's hearing. The report also stated, "I am aware of the confidentiality provisions of U.S. asylum law. The nature of the investigation has not been revealed or implied to any foreign service national (including the investigator) during the inquiry."

The Immigration Law Judge denied Ndreko's request for asylum and ordered that Ndreko be removed from the United States to Albania. Ndreko appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on September 10, 2003. On that date, Ndreko was subject to an administratively final order of removal.

Ndreko, *pro se*, then appealed the BIA decision to the Eighth Circuit Court of Appeals. Ndreko was taken into custody on August 15, 2004. On August 20, 2004, he filed a motion to stay deportation with the Eighth Circuit. On September 10, 2004, the Eighth Circuit denied his motion to stay.

On September 16, Ndreko, through his counsel, Patricia Mattos, filed a request for reconsideration of the September 10 Order. He argued that the State Department investigation violated federal regulations that require "the confidentiality of other records kept by the Service and the Executive Office for Immigration Review that indicate that a specific alien has applied for asylum." 8 C.F.R. § 208.6(b). Additionally, Ndreko claimed that the Immigration Judge erred by relying on the report, because it was inadmissible hearsay. On October 8, the Eighth Circuit denied Ndreko's motion for reconsideration.

On December 6, 2004, Ndreko filed a motion to reopen and a request to stay removal with the BIA. His motion alleged that he received ineffective assistance of counsel at the hearing before the Immigration Judge because his counsel failed to raise the confidentiality argument, failed to raise the hearsay objection, failed to note that the State Department report contained information from the same government that Ndreko was fleeing, and failed to assert that Ndreko's first attorney, Gregory Carpenter, was ineffective.

On December 8, Ndreko learned that he was being put on a plane for removal to Albania. According to Mattos, on that same day, the BIA initially stated that it had received his motion to reopen, but not his motion to stay. Also according to Mattos, at 3:55 p.m. that day, the BIA recounted that it had received his motion to stay, but that Ndreko's plane had departed twenty minutes earlier. Mattos represented that the BIA considered itself to be without jurisdiction to consider his motion once his plane had taken off.

At approximated 4:57 p.m. on the evening of December 8, Ndreko filed a Petition for Writ of Habeas Corpus [Docket No. 1] and a Motion for Temporary Restraining Order [Docket No. 2]. Based on Mattos's representation of the situation, the Court held an immediate telephonic hearing. Mattos did not mention the existence of the pending petition for review before the Eighth Circuit in this matter in the Petition for Writ of Habeas Corpus, in the Motion for Temporary Restraining Order, or during the telephonic hearing. She did request that the Court order Ndreko's Amsterdam-bound plane to change course and land in the United States.

The Court granted the motion for a temporary restraining order the same day. [Docket No. 3] As ordered by the Court, the Government met Ndreko when his flight landed in Amsterdam and gave him a plane ticket for an immediate nonstop return flight to Minneapolis, Minnesota. He returned to Minnesota on December 9. On December 15, the Government filed a motion to dismiss.

As of today's date, Ndreko's petition for review of his removal order is still pending before the Eighth Circuit.

## III. DISCUSSION

### A. Standard

■ The Eighth Circuit Court of Appeals has established the standard for considering temporary restraining orders. *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (*en banc*). This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits. *Id.*

The Government claims that the Court does not have jurisdiction to decide Ndreko's habeas corpus petition because he has

the ability to seek direct appellate review of his removal order. In fact, Ndreko's petition for review is currently pending before the Eighth Circuit. Thus, before considering the merits of Ndreko's motion for temporary injunctive relief under the *Dataphase* factors, the Court must determine whether it has subject matter jurisdiction over Ndreko's habeas corpus petition.

### B. Jurisdiction

▆▆ The Court agrees that under 8 U.S.C. § 1252, it is without jurisdiction to consider Ndreko's habeas corpus petition and stay his removal. "Although habeas jurisdiction remains available to deportees who raise questions of law and who have no other available judicial forum, the statute here provides an adequate judicial forum, permitting the noncriminal deportee to file a petition for review in the appropriate court of appeals." *Lopez v. Heinauer,* 332 F.3d 507, 510–11 (8th Cir.2003) (citing *INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)). In fact, Ndreko has filed a petition for review with the appropriate court of appeals, and that petition is currently pending. *See also Bini v. Aljets,* 36 Fed.Appx. 868, 2002 WL 535083, at *1 (8th Cir.2002) (unpublished) (holding that when the BIA has ruled that a noncriminal alien is subject to removal, but the alien has requested reopening of his proceeding, the district court is without jurisdiction to decide the alien's habeas corpus petition challenging the BIA's decision, because the alien should have raised his challenge in a petition for review before the Eighth Circuit); *Sharif v. Ashcroft,* 280 F.3d 786, 787–88 (7th Cir.2002) (holding that under § 1252(g), the district court lacked jurisdiction to issue a writ of habeas corpus that would stay the execution of a removal order pending the BIA's consideration of petitioners' motion to reopen).

Ndreko asserts that the BIA lost jurisdiction over his stay request when his airplane departed Minnesota; thus, there was no other available judicial forum in which he can seek relief. As already stated, Ndreko can seek relief from the Eighth Circuit. The fact that the Eighth Circuit has twice denied Ndreko's motions to stay removal does not allow Ndreko a second bite at the apple before this Court.

Ndreko also claims that he raises issues in his motion to reopen that are not currently before the Court of Appeals. Although Ndreko's ineffective assistance of counsel claim may not be explicitly before the Eighth Circuit, that claim is based on the admission of the State Department report and the allegedly fraudulent medical records. The issues of the admissibility of the investigative report and of the allegedly fraudulent documents are pending before the Eighth Circuit on direct review. Additionally, Ndreko raised the specific issue of the possible breach of the confidentiality regulation in his motion to reconsider his motion to stay to the Eighth Circuit.

The Eighth Circuit has noted that "Congress's 'fundamental purpose' behind [the] review provision vesting exclusive review in appellate courts was to abbreviate [the] judicial-review process in order to frustrate practices whereby persons subject to deportation were forestalling departure by dilatory tactics in courts." *Bini,* 36 Fed. Appx. 868, 2002 WL 535083, at *1 (citing *Foti v. INS,* 375 U.S. 217, 224, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963)). In this case, Ndreko's direct appeal of his removal order is already pending before the Eighth Circuit, and that court has already denied his motion to stay. This Court lacks jurisdiction to hear Ndreko's habeas petition or his challenge to the Attorney General's decision to execute a valid removal order,

and Ndreko's claims must be argued solely before the Eighth Circuit.

Because the Court concludes that it does not have subject matter jurisdiction over this matter, it does not proceed with the *Dataphase* analysis and the Government's Motion to Dismiss is granted.

## IV. SANCTIONS: FINDINGS OF FACT AND CONCLUSIONS OF LAW

█ When applying for the temporary restraining order, Ndreko's counsel, Patricia Mattos, failed to inform the Court that Ndreko's case is currently pending before the Eighth Circuit and that, in recent months, that court has twice rejected his motions to stay removal. For example, in the Petition for Writ of Habeas Corpus, after recounting the events surrounding Ndreko's December 6 motion to reopen to the BIA, Mattos represented to the Court the following procedural history of this case:

> Petitioner/Plaintiff Ndreko entered the United States as a crewman and filed an affirmative asylum application with the Chicago Asylum office[.] An asylum officer interviewed Petitioner/Plaintiff relative to said application, and his application was referred to the Executive Office of Immigration Review. The Immigration Judge denied Petitioner/Plaintiff's request for relief from removal, and Petitioner/Plaintiff timely appealed to the Board of Immigration Appeals. The BIA dismissed Petitioner/Plaintiff's appeal on September 11, 2003.

Petition for Writ of Habeas Corpus ¶ 7. This recitation wholly omits the fact that, less than one month after the BIA dismissed Ndreko's appeal, he filed a petition for review of that decision with the Eighth Circuit and that petition is still pending. The procedural history also omits the fact that, within the past few months, the Eighth Circuit twice denied Ndreko's motion to stay removal.

Mattos omitted these facts, both in her moving papers and during the telephone hearing on the motion for a temporary restraining order, despite the fact that Mattos is Ndreko's counsel of record in the matter before the Eighth Circuit. In fact, Mattos filed the motion for reconsideration of the motion to stay that was denied by the Eighth Circuit in October.

At the same time that Mattos hid these facts from the Court, she asked the Court to land a plane that had already taken flight. At oral argument on December 17, Mattos first characterized this complete lack of candor as an "oversight," and then proceeded to argue that she had made the determination that the petition for review before the Eighth Circuit was "nondispositive." Mattos's statements demonstrate that her lack of candor was not an "oversight;" rather, she made a calculated decision to hide the existence of the Eighth Circuit proceeding from this Court.

Counsel's statements at oral argument, combined with the fact that Mattos is Ndreko's appellate counsel and the obviously vital importance of the Eighth Circuit proceedings, lead the Court to conclude that Mattos's lack of candor was wilful and in bad faith. Having lost petitioner's motions to stay before the Eighth Circuit, Mattos intentionally misled this Court, during an emergency hearing after normal Court hours, in order to circumvent the Eighth Circuit's clear intention that Ndreko's removal not be stayed. Because she did not achieve the desired result before the proper court, Mattos employed an intentional lack of candor to mislead this Court into issuing an order that it was without jurisdiction to issue and that was in direct conflict with not one, but two clear orders from a superior court.

Mattos's conduct violated the general duty of candor to the tribunal imposed on all officers of the court. *See, e.g., Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) ("Every lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal."). As the Eighth Circuit has noted, "[a]ttorneys, as officers of the court, have the responsibility to present the record with accuracy and candor. On those rare occasions when attorneys fail to do so, the self-destruction of their credibility almost inevitably carries with it damage to their client." *Pinkham v. Sara Lee Corp.,* 983 F.2d 824, 833 (8th Cir.1992).

At Mattos's request, a telephonic hearing on the motion for the temporary restraining order was immediately held on Wednesday evening, after normal working hours, less than one hour after the petition for habeas corpus and the motion were filed. By filing the motion with the Court after Ndreko's airplane had departed the airport, Mattos created an emergency situation, which disadvantaged both the Court and the Government, and induced the Court to rely on Mattos's representations regarding the "emergency" before it. Mattos knew that the Government had less than an hour to receive and read her motion and to assign an available Assistant United States Attorney to the case who could appear at the hearing. Thus, although the Government was represented at the hearing, the hearing was similar to an ex parte motion for a temporary restraining order, in that only Mattos had knowledge of the fact situation, including the existence of the pending Eighth Circuit litigation in which she was involved. Minnesota Rule of Professional Conduct 3.3(d) notes that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." Clearly, Mattos failed to inform the Court of material facts in this case.

However, Mattos's conduct went beyond a failure to inform the Court of all material facts: Mattos's failure to disclose the existence of the Eighth Circuit case, and this Court's lack of jurisdiction, constituted a misrepresentation to the Court in violation of Minnesota Rule of Professional Conduct 3.3(a). Rule 3.3 provides, in part:

a) A lawyer shall not knowingly:

(1) make a false statement of fact to a tribunal;

\*    \*    \*    \*    \*    \*

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

Rule 3.3 requires candor to the tribunal. "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." Comment to Rule 3.3. "Selective omission of relevant information, therefore, 'exceeds the bounds of zealous advocacy and is wholly inappropriate.'" *Gum v. Dudley,* 202 W.Va. 477, 505 S.E.2d 391, 401 n. 14 (1997) (citation omitted). Rule 3.3(a) is violated when an attorney who is personally involved in ongoing proceedings before the Eighth Circuit fails to disclose the existence of those proceedings, and of directly contrary rulings by the Eighth Circuit in the same case, to a district court during an emergency hearing held at that attorney's insistence. Mattos's failure to uphold her ethical obligations as an officer of the court misled this Court into granting a motion when it was without jurisdiction to hear the case and placed it in direct contradiction with the rulings of its superior court. Mattos also caused the Govern-

ment to incur the expense of flying Ndreko back to the United States when he was subject to a valid removal order.

 Because of the serious consequences of Mattos's conduct and the lack of judgment demonstrated by her actions, the Court imposes the following sanctions under its inherent power: Mattos is suspended from practicing law before the undersigned judge, and she is ordered to attend a continuing legal education course on attorney ethics within the next year. These sanctions are intended to punish Mattos for her actions and to deter her from repeating those actions. The Court hopes that both this opinion and the continuing legal education class will teach Mattos how to better carry out her duties as both an attorney and an officer of the court. She did no favor to her client by having him flown across the globe under false pretenses and without hope of relief from a Court that had no power to decide his case. Finally, because Mattos's conduct violated the Minnesota Rules of Professional Conduct, a copy of this opinion is being forwarded to the Office of Lawyers Professional Responsibility.

Accordingly, based upon the files, records, and proceedings herein, IT IS

HEREBY ORDERED:

1.  Attorney Patricia Mattos is hereby suspended from practicing law before the undersigned judge in the United States District Court for the District of Minnesota.

2.  Attorney Patricia Mattos is ordered to attend a continuing legal education class on attorney ethics. Mattos shall certify to this Court in an affidavit within one year that she has completed this directive.

3.  The Clerk of Court shall send a copy of this Order to the following:

Office of Lawyers Professional Responsibility
1500   Landmark Towers
345   St. Peter Street
St. Paul, MN 55102–1218