**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

DEC 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| SHAGDAR BOLDMYAGMAR; et al., | No. 18-72534 |
| Petitioners, | Agency Nos. A097-583-345 |
| v. | A097-583-346 |
|  | A097-583-347 |
| WILLIAM P. BARR, Attorney General, | A097-583-348 |
| Respondent. | MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 10, 2020[**]
San Francisco, California

Before:   TALLMAN, MURGUIA, and CHRISTEN, Circuit Judges.

Lead petitioner Shagdar Boldmyagmar, a native and citizen of Mongolia,

along with his wife and two sons, petitions for review of the Board of Immigration

Appeals' (BIA) decision denying his third motion to reopen his removal

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

proceedings.[1]  We have jurisdiction under 8 U.S.C. § 1252.  Reviewing for abuse of discretion the denial of a motion to reopen, *Go v. Holder*, 744 F.3d 604, 609 (9th Cir. 2014), we deny the petition for review.

1.  An alien may file one motion to reopen within ninety days of a final administrative order of removal.  8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c)(2); *see also Go*, 744 F.3d at 607.  Boldmyagmar's third motion to reopen, filed on March 1, 2018—ten years after the BIA issued its final order of removal in his case—is admittedly time- and number-barred.  Boldmyagmar argues that he should receive the benefit of the exception for motions to reopen "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."  8 C.F.R. § 1003.2(c)(3)(ii).  According to Boldmyagmar, his receipt in 2016 of a settlement approved by the California Workers' Compensation Appeals Board awarding him a permanent disability rating of 18% and "lifetime care for his [2006] shoulder injury should a doctor find that there is a need for medical treatment that is due to his work-related injury," constitutes a changed circumstance.  Boldmyagmar relies on our decision in *Vahora v. Holder*, 641 F.3d

---

[1] We refer only to lead petitioner Boldmyagmar in this disposition as his asylum application applies to his wife and children as derivative beneficiaries.  8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. § 1208.3(a).

1038 (9th Cir. 2011); *Vahora*, however, granted relief based on changed circumstances in the petitioner's "home country," *id.* at 1045, and therefore provides no support for Boldmyagmar's position. The BIA did not abuse its discretion in concluding that Boldmyagmar has not demonstrated that his motion to reopen falls within any exception to the time or number requirements.

2. Boldmyagmar also argues that the BIA should have exercised its *sua sponte* power to reopen under 8 C.F.R. § 1003.2(a), and—reading his brief generously—that he warrants a discretionary grant of humanitarian asylum because the loss of his worker's compensation settlement benefits upon removal constitutes a "reasonable possibility that he . . . may suffer other serious harm" under 8 C.F.R. § 1208.13(b)(1)(iii)(B). We are generally without jurisdiction to review the BIA's discretionary determination not to exercise its *sua sponte* authority to reopen. *See Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016) (we may examine BIA decisions denying *sua sponte* reopening for "the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error"). To the extent that its refusal to *sua sponte* reopen the application was based on its conclusion that Boldmyagmar had failed to identify a form of relief from removal for which he was eligible, the BIA did not abuse its discretion. To be eligible for humanitarian asylum "an applicant must still establish past persecution on account of a protected ground." *Belishta v. Ashcroft*, 378 F.3d 1078, 1080 (9th Cir. 2004).

3

Boldmyagmar's claims of past persecution on account of his political opinion were found not to be credible. *See Boldmyagmar v. Holder*, 516 F. App'x 675, 676 (9th Cir. 2013). Accordingly, he is not eligible for a discretionary grant of humanitarian asylum—the only form of relief he advanced in his third motion to reopen.

3. Boldmyagmar next claims, without any argument, analysis, or citations to authority which would enable us to grant him relief, that his removal would lead to an unconstitutional taking of his "later acquired equity and property interest in receiving the medical benefits embodied in the decision of the State of California Workers' Compensation Appeals Board decision." Even if Boldmyagmar had raised this issue in sufficient detail to warrant consideration, *see Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003), we are dubious of the proposition that we could set aside an otherwise valid final removal order from 2013 as a remedy for an allegedly unconstitutional taking of a property interest that came about three years after we affirmed that removal order.

4. Finally, Boldmyagmar argues that the Department of Homeland Security (DHS) has "an obligation to exercise its discretion in a manner that recognizes and respects the decision of the California Workers['] Compensation Appeals Board," and that DHS abused that discretion when it declined to exercise its prosecutorial discretion not to remove Boldmyagmar or to grant his Application for a Stay of

4

Deportation or Removal under 8 C.F.R. § 241.6. We are barred by 8 U.S.C. § 1252(g) from reviewing discretionary, quasi-prosecutorial decisions by DHS to adjudicate cases or refer them for prosecution. *See, e.g.*, *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120–21 (9th Cir. 2001). We have not yet had occasion to decide whether § 1252(g) bars review of a decision to deny an administrative stay of removal under 8 C.F.R. § 241.6, but we will not answer that question today.[2] Boldmyagmar's briefing on this issue comprises less than one page, cites no authority, and consists entirely of "bold assertion[s]" with "little if any analysis to assist [us] in evaluating [the] legal challenge." *Indep. Towers of Wash.*, 350 F.3d at 929. "We require contentions to be accompanied by reasons," *id.* at 930, and here Boldmyagmar has failed to provide any reasons.

**PETITION FOR REVIEW DENIED.**

---

[2] Two of our sister circuits concluded that such a discretionary denial is part of a decision to execute a removal order, and thus barred from review under § 1252(g). *See Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004) (concluding "that by challenging the decision to deny a request for a stay, [petitioner] is seeking to enjoin the Attorney General from executing a valid order of deportation" and that the "district director's decision is therefore protected from subsequent judicial review under § 1252(g)"); *Sharif ex. rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) (holding that judicial review is barred because "[a] request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order" (quoting § 1252(g)). We leave for another day the resolution of this open question.